UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JE DUNN CONSTRUCTION COMPANY, a foreign business corporation,<br><br>    Plaintiff/Counter Defendant,<br><br>    v.<br><br>OWELL PRECAST LLC, dba OLYMPUS PRECAST, LLC,<br><br>    Defendant/Counterclaimant/ Cross-Petitioner,<br><br>    v.<br><br>ERIKSSON TECHNOLOGIES, INC., a foreign business corporation,<br><br>    Respondent on Cross-Petition, | Case No. 4:20-cv-00158-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Olympus' Cross-Petition to Compel Arbitration. Dkt. 9. The Court ordered supplemental briefing on the cross-petition, which is now complete.

Having fully reviewed the record, the Court finds that the facts and legal

MEMORANDUM DECISION AND ORDER - 1

arguments are adequately presented in motions, the briefs on the merits, and the record. Accordingly, in the interest of avoiding delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1. For the reasons that follow, the Court will deny Olympus' cross-petition.

## BACKGROUND

The claims in this case arise out of a contract dispute between J.E. Dunn (JED) and Olympus, related to precast concrete roof panels used in the Grey Wolf Project in Pocatello, Idaho. Olympus entered into a contract with JED, in which it agreed to furnish labor, materials, and services for precast concrete work at the project. *See Memorandum Decision and Order* at 3, Dkt. 31. Olympus contracted its design obligations to Eriksson. *Cross-Petition* ¶ 10, Dkt. 9.

The JED-Olympus contract contained an arbitration clause. Dkt. 31. It is undisputed that the Olympus-Eriksson contract does not contain an arbitration clause. *See* Dkt. 9. Eriksson was not a party to the JED-Olympus contract.

On August 3, 2020, the Court granted JED's petition to compel Olympus to arbitrate. Dkt. 31. Olympus had filed a cross-petition against Eriksson, alleging it should be compelled to join in the JED-Olympus arbitration. The Court ordered supplemental briefing, which has now been completed.

MEMORANDUM DECISION AND ORDER - 2

## LEGAL STANDARD

The Federal Arbitration Act provides that "any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable' and permits a party 'aggrieved by the alleged ... refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. §§ 2 and 4).

By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Accordingly, the Court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. The party seeking to compel arbitration has the burden of proving each requirement. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If the Court answers yes to each of the above questions, the FAA requires that the Court enforce the arbitration agreement in accordance with its terms. *Id*.

When deciding a petition to compel arbitration, a summary-judgment

standard applies. *Burch-Lucich v. Lucich*, 2013 WL 5876317, at *4 (D. Idaho Oct. 31, 2013). "Under this standard, the Court will treat the facts as it would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Id.* (internal quotations and brackets omitted).

## ANALYSIS

It is undisputed that the contract between Olympus and Eriksson did not contain an arbitration provision. Olympus argues that Eriksson should be compelled to arbitrate because it is equitably estopped from avoiding arbitration. Dkt. 9, 35. To support its theory, Olympus argues that Eriksson knowingly exploited the JED-Olympus contract, even though it was not a signatory to that contract – or any contract with an arbitration clause.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted). In the arbitration context, "nonsignatories have been held to arbitration clauses where the nonsignatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (internal quotation marks and citation omitted). While, the Federal

**MEMORANDUM DECISION AND ORDER - 4**

Arbitration Act created substantive federal law regarding the enforceability of arbitration agreements, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009), state law applies in determining whether a nonsignatory may be compelled to arbitrate under a theory of equitable estoppel. *Id.*

The Idaho Supreme Court has held that there is no basis to compel arbitration against a party who does not have a written agreement to arbitrate. *See Clearwater REI, LLC v. Boling*, 155 Idaho 954, 959 (2014). In *Clearwater*, the Court declined to adopt the defendant's argument that nonsignatories to the contract could be equitably estopped from refusing to arbitrate. Thus, Eriksson may not be compelled to arbitrate under Idaho law.

Even assuming that federal law applies to determine whether a nonsignatory can be compelled to arbitrate where it knowingly exploited the agreement containing the arbitration clause, *Comer*, 436 F.3d at 1101, Eriksson did not knowingly exploit the JED-Olympus contract.

Olympus alleges that it provided Eriksson with a copy of the "Front End" documents, which requires that "Contracts between the Contractor and each Subcontractor shall: (1) require each Subcontractor …to conform to the Contract Documents…." Dkt. 36 at 25. Eriksson disputes that it ever received or reviewed a copy of the "Front End" document. Even if it had, this does not demonstrate that it

**MEMORANDUM DECISION AND ORDER - 5**

knowingly exploited the JED-Olympus contract. The "Front End" document is an invitation to bid and includes various form agreements, including a proposed contract between JED and the contractor – Olympus in this case. Dkt. 36 at 23. The form contract contains an arbitration provision. However, it does not make subcontractors party to the agreement, nor does it purport to bind subcontractors. Instead it requires Olympus to include certain provisions in subsequent contracts with its subcontractors. Olympus was not required to, nor did it, include an arbitration agreement in its contract with Eriksson.

Olympus has presented no facts demonstrating Eriksson knowingly exploited the JED-Olympus contract. The record establishes just the opposite. Eriksson had a separate contract with Olympus, which does not reference the JED-Olympus contract. Eriksson never claimed any rights arising out of the JED-Olympus contract. Eriksson submitted work to Olympus, which in turn submitted it to JED. Eriksson's payment was not contingent on the JED-Olympus contract. Accordingly, Olympus' cross-petition will be denied.

**MEMORANDUM DECISION AND ORDER - 6**

## ORDER

**IT IS ORDERED** that Olympus Precast's Cross-Petition to Compel Arbitration (Dkt. **9**) is **DENIED**.

DATED: November 17, 2020

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 7**